Filed 8/3/21  Nolfo v. The Lyndon Group CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KATHERYN NOLFO et al., | |
| Plaintiffs and Respondents, | G059241 |
| v. | (Super. Ct. No. 30-2019-01086438) |
| THE LYNDON GROUP, LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Charles Margines, Judge.  Affirmed.

Stuart Kane, Bruce D. May and Shane P. Criqui for Defendants and Appellants.

Denis & Rasi, Ethan E. Rasi and Paul J. Denis for Plaintiffs and Respondents.

\*          \*          \*

## INTRODUCTION

Katheryn Nolfo, Andreas Wittmann, and Brian Medenwaldt (collectively plaintiffs) filed a lawsuit in which they asserted several wage-related claims against The Lyndon Group and Kenneth Jones (collectively defendants). Among those claims was a claim alleged by Nolfo and Wittmann for willful misclassification of employment under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

Defendants moved to compel to arbitration all but one of Wittmann's claims pursuant to the arbitration provision contained in Wittmann's consulting agreement with defendants. Defendants did not seek arbitration of Wittmann's PAGA claim, which defendants concede cannot be compelled to mandatory arbitration. (See *lskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*).) The trial court denied the motion to compel on the ground that the third party exception under Code of Civil Procedure section 1281.2, subdivision (c) (section 1281.2(c)) applied.

We affirm. The record supports the court's findings that the conditions of the third party exception were met here. Substantial evidence shows that within the meaning of section 1281.2(c): (1) Wittmann was a party to a pending court action with a third party (Nolfo and Medenwaldt); (2) Wittmann's non-PAGA claims on the one hand, and Nolfo and Medenwaldt's claims on the other, arose out of the same transaction or series of related transactions; and (3) there would be a possibility of conflicting rulings on a common issue of law or fact. The trial court did not err by denying defendants' motion to compel arbitration.

## FACTS AND PROCEDURAL HISTORY

## I.

### PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEFENDANTS' ANSWER

Plaintiffs filed a first amended complaint alleging they performed work for The Lyndon Group, a "'travel expenses and other . . . management services' company" with a principal place of business in Newport Beach, and Jones, who is "an individual, a managing agent, and the current Chief Executive Officer" of The Lyndon Group.

The first amended complaint alleged Nolfo, a California resident, performed work for defendants as both an employee and as a purported independent contractor; Wittmann, a Florida resident, performed work for defendants as a purported independent contractor; and Medenwaldt, a New York resident, performed work for defendants as an employee. Nolfo and Wittmann asserted against defendants a PAGA claim for willful misclassification and a claim for failure to reimburse business expenses in violation of Labor Code section 2802. All plaintiffs asserted a claim for breach of written or oral contract against The Lyndon Group for failure to pay commissions contractually owed to them. Plaintiffs also asserted claims against defendants for failure to pay all wages, including commissions (Lab. Code, §§ 200, 201, 226, 558, 558.1), failure to pay all wages due upon separation of employment (*id.*, §§ 201-203), failure to provide accurate itemized wage statements (*id.*, § 226), and for restitution and injunctive relief for unfair business practices (Bus. & Prof. Code, §17200).

Attached as Exhibit B to the first amended complaint was a copy of a consulting agreement between The Lyndon Group and T&E Consulting, LLC (consulting agreement). On the signature page of the consulting agreement appear the signature of Kenneth Jones, identified as "Executive Managing Director" of The Lyndon Group, and a signature line for Wittmann, identified as "Managing Director" of T&E Consulting LLC. Paragraph 23 of the consulting agreement states: "ARBITRATION. Except to the extent that a party is entitled to seek injunctive or other equitable relief, any controversy or

3

claim arising out of or relating to this Agreement shall be settled by binding arbitration before a single arbitrator in accordance with the then-existing rules for commercial arbitration of the American Arbitration Association, and judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Any arbitration shall be held in Orange County, California. The costs of such arbitration and the attorneys' fees and other experts' fees and related costs of all parties shall be borne by the party against whom the arbitrator rules."

Defendants' answer to the first amended complaint included the affirmative defense that each cause of action was subject to mandatory, contractual arbitration.

## II.

### MOTION TO COMPEL ARBITRATION

Defendants filed a motion to compel arbitration of Wittmann's claims pursuant to the arbitration provision in the consulting agreement. In his opposition to the motion, Wittmann argued (1) the PAGA claim, "which is a threshold issue critical to a significant amount of liability and damages in this case, is exempt from arbitration" (bold and underscoring omitted); (2) the arbitration provision in the consulting agreement is unconscionable; and (3) "[j]udicial economy will not be served by compelling arbitration because co-Plaintiff Kath[e]ryn Nolfo's claims overlap substantially with Plaintiff Wittmann['s], which would likely result in duplication of efforts and inconsistent rulings, among other problems."

In their reply, defendants, inter alia, acknowledged that under *Iskanian, supra*, 59 Cal.4th 348, Wittmann's PAGA claim was not subject to mandatory arbitration. Defendants urged the trial court to order all of Wittmann's other claims to arbitration and stay his PAGA claim until arbitration of those claims was completed.

4

# III.

## THE TRIAL COURT DENIES THE MOTION TO COMPEL

At the hearing on the motion, the trial court invited the parties' counsel to present argument in light of the court's tentative ruling to deny the motion to compel arbitration pursuant to the third party exception under section 1281.2(c). Following the hearing, the trial court took the matter under submission.

The trial court thereafter denied the motion to compel arbitration on the ground the third party exception applied. In its minute order, the trial court explained:

"The provisions of CCP § 1281.2(c) tend to indicate that the court should exercise its discretion herein and decline to order arbitration. Section 1281.2(c) states that one of the grounds for the court to decline to order the parties to arbitrate is if: [¶] '(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.'

"Defendants' Reply argues that the court should stay Plaintiff Wittmann's PAGA claim and order the balance of the claims to arbitration. If the court does so, in order for the arbitrator to make a determination as to the remaining causes of action, he/she will have to make a factual and legal determination that an employee/employer relationship existed between Wittmann and the Defendants, which is the same central issue as the misclassification grounds for Wittmann's PAGA claim. As the court will have to make that same determination to resolve the First Cause of Action, there is a very real possibility that the arbitrator and the court will reach different—indeed conflicting—determinations as to the existence of employee/employer relationships between the parties.

"Additionally, co-Plaintiffs Katheryn Nolfo and Brian Medenwaldt have brought claims arising out of substantially similar facts as those being sought to be

5

arbitrated by Defendant[s]. Having the arbitrator resolve some of the causes of action as to only one of three different Plaintiffs creates an additional reasonable possibility of conflicting rulings between the court and the arbitrator.

"Indeed, the court's discretion under CCP § 1281.2(c) constitutes independent grounds to deny the entire motion."

Defendants appealed.

## DISCUSSION

## I.

### SECTION 1281.2(C) AND THE GOVERNING STANDARDS OF REVIEW

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes. [Citation.] To further that policy, [Code of Civil Procedure] section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. [Citation.] Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues. (§ 1281.2, subds. (a)-(c).)" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967 (*Acquire II*).)

The third party litigation exception, which is codified at section 1281.2(c), may apply if the following conditions are met: (1) "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party"; (2) the third party action "aris[es] out of the same transaction or series of related transactions"; and (3) "there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2(c).) "If all three of these conditions are satisfied, then section 1281.2(c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. [Citation.] Specifically, section 1281.2 identifies four options from which the

6

court may choose:  (1) 'refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding'; (2) 'order intervention or joinder as to all or only certain issues'; (3) 'order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding'; and (4) 'stay arbitration pending the outcome of the court action or special proceeding.' (§ 1281.2.)"  (*Acquire II, supra*, 213 Cal.App.4th at p. 968.)

A trial court does not have discretion to deny a motion to compel or to stay arbitration unless all three of section 1281.2(c)'s conditions have been satisfied. (*Acquire II, supra,* 213 Cal.App.4th at p. 968.)  "When section 1281.2(c) applies, 'the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse.'  [Citations.]  The trial court's decision whether section 1281.2(c) applies, however, is reviewed under either the substantial evidence standard or the de novo standard.  If the court based its decision on a legal determination, then we adopt the de novo standard.  [Citations.]  If the court based its decision on a factual determination, then we adopt the substantial evidence standard of review.  [Citation.]  Whether there are conflicting issues arising out of related transactions is a factual determination subject to review under the substantial evidence standard."  (*Id.* at pp. 971-972.)

## II.
### THE TRIAL COURT DID NOT ERR BY DENYING THE MOTION TO COMPEL ARBITRATION UNDER SECTION 1281.2(c)

Defendants do not dispute that the first condition of the third party exception under section 1281.2(c) was satisfied.  They acknowledge that Nolfo and Medenwaldt are parties to the underlying litigation and that neither is subject to the arbitration provision in Wittmann's consulting agreement.  Instead, defendants contend the trial court "erred as a matter of law and fact in finding that the second and third

7

elements also existed" because "[t]he record simply does not support such a conclusion." Defendants' contention is without merit.

A.

*Plaintiffs' Court Claims and Wittmann's Arbitrable Claims Arise Out of the Same Transaction or Series of Transactions*

As to the second condition, the trial court found that plaintiffs' court claims and Wittmann's arbitrable claims arose out of the same transaction or series of related transactions. This is not surprising: Nolfo and Wittmann join in the first amended complaint to assert the same causes of action against defendants for alleged violations of wage and hour law, and Medenwaldt joins Nolfo and Wittmann in asserting all but the PAGA misclassification claim against defendants. (See *Acquire II, supra*, 213 Cal.App.4th at p. 971 ["We emphasize the allegations of the parties' pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2(c) applies"].)

Under the heading "Facts Common to All Causes of Action," the first amended complaint alleges that, at times, defendants misclassified Nolfo and Wittmann as independent contractors, causing them to suffer damages in the forms of unpaid wages, unpaid commissions, unreimbursed business expenses such as travel and vehicle expenses, and other out of pocket expenses. Other than perhaps the breach of contract claim, each of Nolfo's and Wittmann's claims depends on the determination that they were misclassified as independent contractors. Nolfo's and Wittmann's claims seek the same remedies for defendants' failure to pay earned wages. Both Nolfo and Wittmann seek, as damages, recovery of unpaid commissions, reimbursement of business expenses, and provision of itemized wage statements. Nolfo's and Wittmann's claims are commonly and necessarily rooted in defendants' set of employment policies governing their classification of workers and their payroll and billing practices.

8

Substantial evidence, therefore, supported the finding that Wittmann's arbitrable claims and Nolfo's claims, which are not subject to mandatory arbitration, arose out of the same transaction or series of related transactions within the meaning of section 1281.2(c). Defendants argue that insufficient evidence supported this finding because the record does not specify the "services each of the Plaintiffs performed or what conditions they worked under." We reject that argument. The record shows plaintiffs did not have identical working circumstances (e.g., two were under written contract with defendants, each plaintiff lives and works in a different state). But what is dispositive under the statute is not those differences in individual circumstances but the fact Nolfo's and Wittmann's claims arose out of the same transaction or series of transactions, namely, defendants' employment policies and payroll and billing practices.

This case, therefore, is distinguishable from *Acquire II, supra*, 213 Cal.App.4th 959 upon which defendants rely. In *Acquire II*, a panel of this court concluded insufficient evidence supported the trial court's findings that the claims of those plaintiffs who had agreed to arbitration and the claims of those plaintiffs who had not agreed to arbitration arose out of the same transaction or series of transactions. (*Id.* at p. 973.)

The *Acquire II* court explained: "Plaintiffs' claims regarding their decisions to invest with Defendants arose out of separate transactions because *each group of Plaintiffs invested in different funds or properties at different times over a 10-year period.* Defendants offered investment opportunities in each fund and property under separate private placement memoranda months or years apart. Even the share investment and tenant in common investment opportunities in the same fund were offered at different times. Each group of Plaintiffs executed separate agreements to define their rights and obligations depending on the fund or property in which they invested. [¶] Plaintiffs' claims regarding Defendants' management of the funds and properties also arose out of separate transactions because Defendants managed different funds and different

9

properties for each group of Plaintiffs. A transaction regarding one property or fund did not affect a separate property held in a separate fund. Separate agreements governed Defendants' management of each fund and each group of properties. Specifically, Defendants managed the properties the funds held for the share investors under separate operating agreements governing each fund and they managed the separate properties each fund owned with the tenant in common investors under separate property management agreements." (*Acquire II, supra*, 213 Cal.App.4th at p. 974, italics added.)

Here, as we have explained, the plaintiffs' claims in this case, unlike the plaintiffs' claims in *Acquire II*, arose out of the same set of employment policies and payroll and billing operations.

B.

*There Is a Possibility of Conflicting Rulings on a Common Issue of Law or Fact*

The trial court found that the final condition of the third party exception under section 1281.2(c) was also satisfied. Defendants argue the third condition was not satisfied because only the trial court may decide the PAGA claim and in so doing may disregard any classification findings made by the arbitrator as to Wittmann's non-PAGA claims.

In their opening brief, defendants argue: "As the Minute Order reflects, the Superior Court reasoned that if the second through seventh causes were ordered to arbitration, the arbitrator and the court could end up issuing conflicting rulings on whether an employment relationship existed between the Company and Plaintiff Wittmann. The flaw in this reasoning is that under *Iskanian* . . . , only the Superior Court can adjudicate a PAGA claim and under *Williams v. Superior Court* [(2015) 237 Cal.App.4th 642], a PAGA claim cannot be split into an arbitrable individual claim and a non-arbitrable representative claim. Instead, only the Court can adjudicate both those aspects of a PAGA claim, which means the Court can ignore, reject, or adopt the

10

arbitrator's findings as the Court sees fit. This eliminates the possibility of inconsistent rulings by the Court and the Arbitrator on the PAGA claim." (Underscoring omitted.)

The question under the statute here, however, is whether compelling arbitration and staying nonarbitrable claims create the possibility of conflicting rulings on a common issue of law or fact in the first place—not whether it is within the trial court's power to thereafter adopt or reject relevant prior rulings by an arbitrator in resolving nonarbitrable claims. Indeed, defendants' argument itself assumes that the circumstances presented here trigger the possibility of conflicting rulings.

Furthermore, the trial court's minute order does not conflict with *Williams v. Superior Court, supra*, 237 Cal.App.4th 642 or otherwise suggest the PAGA claim would be split into an individual claim to be decided by the arbitrator and a representative claim to be decided by the trial court. Instead, the trial court's reasoning that all of Nolfo's and Wittmann's claims—regardless of the arbitrability of some—are based on same central issue of misclassification.

Defendants also argue plaintiffs' unique circumstances undermine a finding that arbitration of Wittmann's arbitrable claims would create the possibility of conflicting rulings: "There is no substantial evidence to show that the Arbitrator's adjudication of Mr. Wittmann's non-PAGA claims would have any bearing on the claims by Plaintiffs Nolfo or Medenwaldt. A finding by the arbitrator that Mr. Wittmann was due commissions under the written Consulting Agreements for services rendered through his consulting company in Florida does not indicate that Ms. Nolfo is due commissions under her unwritten agreement with The Lyndon Group LLC in California or that Mr. Medenwaldt is due commissions under his offer letter for employment in New York."

The third condition of the exception under section 1281.2(c) is satisfied by showing the existence of "a possibility of conflicting rulings on a common issue of *law or fact*." (Italics added.) Again, the misclassification issue at the heart of Nolfo's and Wittmann's claims is, at a minimum, a common issue of law. Resolution of Wittmann's

11

classification status in the arbitration of his non-PAGA claims would therefore create the possibility of conflicting rulings on this common issue of law.

Defendants' reliance on *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73 (*Kim*) is without merit. In *Kim*, the issue presented was whether an employee loses standing to pursue a PAGA claim if the employee settles and dismisses individual claims for Labor Code violations after those claims were compelled to arbitration. (*Id.* at pp. 80, 82.) The Supreme Court held that the "[s]ettlement of individual claims does not strip an aggrieved employee of standing, as the state's authorized representative, to pursue PAGA remedies." (*Id.* at p. 80.)

In their opening brief, defendants argue: "*Kim* reinforces the conclusion that the Superior Court in the instant case erred in denying arbitration because in adjudicating Mr. Wittmann's PAGA claim, the Superior Court would not be bound by any finding by the Arbitrator on his non-PAGA claims. Instead, the Superior Court alone will decide whether Mr. Wittmann should have been classified as an employee or independent contractor with respect to his claim for civil penalties under PAGA. This eliminates the possibility of inconsistent rulings within the meaning of Section 1281.2(c) on the PAGA claim, which means the Superior Court erred in denying arbitration."

The only issue presented in *Kim* was the effect of a settlement of non-PAGA claims on the resolution of a PAGA claim—there was no issue of a conflicting or possibly conflicting prior finding or ruling by an arbitrator. The Supreme Court in *Kim* did not address section 1281.2 at all, much less the third condition of the third party exception under subdivision (c).

12

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.

Respondents shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MOORE, J.

13