Filed 10/18/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CARLLIE WILLIAMS, | C091253 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2019-00266017-CU-PO-GDS) |
| v. | |
| RGIS, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Gibson, Dunn & Crutcher, Jesse A. Cripps and Matthew T. Sessions for Defendant and Appellant.

Capstone Law, Ryan H. Wu and Liana Carter for Plaintiff and Respondent.

Defendant RGIS, LLC (RGIS) appeals the trial court's order denying its petition to compel arbitration of representative claims under the Private Attorney General Act of 2004 (PAGA) (Lab. Code, § 2699 et seq.).[1]  In denying the petition, the trial court followed our Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held that individual employees cannot contractually waive their right to bring a representative action under the PAGA, and this state law rule is not preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.).

RGIS argues that our Supreme Court's holding in *Iskanian* was subsequently abrogated by the United States Supreme Court's decision in *Epic Systems Corporation v. Lewis* (2018) __ U.S. __ [138 S.Ct. 1612] (*Epic Systems*).  *Epic Systems*, however, did not consider the same issue concerning the nonwaivable nature of PAGA claims decided by *Iskanian*.  Accordingly, and along with every published Court of Appeal decision that has decided this issue, we reject the argument and follow *Iskanian*.  Although we agree with the multitude of reported cases addressing this issue, we publish this opinion because this is an issue of first impression for this district.

<strong>FACTS AND PROCEEDINGS</strong>

*RGIS's Dispute Resolution Program*

Carllie Williams worked as a non-exempt, hourly paid retail employee for RGIS from May 31, 2018, to December 2018.  On her first day of work, RGIS provided Williams with an electronic copy of its dispute resolution booklet, and Williams signed an acknowledgement of receipt of that booklet.

The 22-page booklet sets out the details of RGIS's five-step dispute resolution program (the program), which includes three voluntary internal steps, voluntary

---

[1]  Further undesignated statutory references are to the Labor Code.

mediation, and, finally, mandatory and binding arbitration. Employees who do not opt out of the program within 60 days of hire "mutually agree" with RGIS "to be bound by its terms and to resolve all claims covered by the Program through mandatory, final and binding arbitration, instead of through litigation in court." With exceptions not applicable here, the program applies to all employment-related claims, including "any claims, demands and actions related to wages and compensation, reimbursement, breaks and rest periods" "and any other cause or action arising out of or relating to employment or the termination of employment." Williams did not opt out of the program.

The arbitration agreement in the booklet contains an express class and PAGA representative action waiver requiring that "any dispute in arbitration" be brought "on an individual basis only, and not on a class or collective basis." (Capitalization and boldface omitted.) It provides in part: "[F]or any claim brought on a private Attorney General basis – i.e. where you are seeking to pursue a claim on behalf of a government entity – both you and RGIS agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other employees or individuals in a single or collective proceeding (i.e., to resolve whether other employees or individuals have been aggrieved or subject to any violations of law)." (Uppercase, boldface, & underlining omitted.)

*Williams Brings a PAGA-Only Action Against RGIS*

In September 2018, Williams filed a complaint asserting one cause of action for civil penalties owed under PAGA for violations of the Labor Code. She filed her first amended complaint in October 2019. She alleged multiple violations of the Labor Code, and she sought assessment of civil penalties for the underlying Labor Code violations under PAGA, attorney fees and costs, interest, and such relief as the court may deem equitable.

*RGIS's Motion to Compel Arbitration and Trial Court Decision*

RGIS moved to compel arbitration seeking to have Williams submit her claims to arbitration on an individual basis. It argued that the dispute must be compelled to arbitration because the high court's decision in *Epic Systems*, *supra*, __ U.S. __ [138 S.Ct. 1612] effectively overruled *Iskanian*, *supra*, 59 Cal.4th 348. RGIS also argued that all civil court proceedings should be stayed pending completion of arbitration.

The trial court denied the motion to compel arbitration. The court ruled that it was "not persuaded" that *Epic Systems* overruled *Iskanian*. The court observed that *Iskanian* "held that PAGA representative waivers are unenforceable," and it recognized that *Epic Systems* did not address the PAGA, but instead "considered the relationship between the FAA and a provision of the National Labor Relations Act guaranteeing workers the right to engage in 'concerted activit[y].' " Thus, *Epic Systems* "focused on the NLRA not the PAGA, did not abrogate *Iskanian*'s bar on PAGA waivers or its conclusion that such bar was not preempted by the FAA." The court rejected RGIS's further arguments to distinguish *Iskanian* and to claim the PAGA is not a true qui tam.

RGIS timely appealed. The case was fully briefed in April 2021, and submitted after oral argument was heard on September 21, 2021.

## DISCUSSION

### I

*Motion to Compel Arbitration*

RGIS contends that the trial court erred in refusing to enforce the arbitration agreement provision barring Williams from bringing representative claims. It argues that the FAA requires courts to enforce agreements for individual arbitration, that *Iskanian* was wrongly decided, and the high court's decision in *Epic Systems* abrogated *Iskanian*'s holding that the FAA does not apply to PAGA actions. RGIS then contends that the California Court of Appeal decisions uniformly rejecting these arguments are wrongly

decided or inapposite because Williams had the ability to opt out of the program. Finally, RGIS contends the "trend" in federal court is moving in the direction of the FAA preempting *Iskanian*. We, too, reject RGIS's arguments.

A. *Standard of Review*

We review de novo the trial court's denial of the motion to compel arbitration, as it rests on a determination of law. (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 864 ["to the extent the denial relies on a determination of law, we review the trial court's resolution of that determination de novo"].) "[W]e are not bound by the trial court's rationale, and thus may affirm the denial on any correct legal theory supported by the record, even if the theory was not invoked by the trial court." (*Ibid*.)

B. *PAGA*

"Under PAGA, ' "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." ' [Citation.] Before bringing the PAGA action, the employee must give notice of the alleged Labor Code violations to the employer and the Labor and Workforce Development Agency (LWDA). [Citations.] The employee may bring the PAGA action only after the LWDA refuses to investigate or the agency's investigation results in no citation. [Citations.] Most of the recovered civil penalties (75 percent) go to the LWDA, with the remainder going to the aggrieved employees. [Citations.] 'All PAGA claims are "representative" actions in the sense that they are brought on the state's behalf. The employee acts as " 'the proxy or agent of the state's labor law enforcement agencies" ' and " 'represents the same legal right and interest as' " those agencies.' [Citation.] Thus, a PAGA action to ' "recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " ' " (*Collie v. The Icee Company* (2020) 52 Cal.App.5th 477, 481 (*Collie*).)

5

C.  Iskanian *and* Epic Systems

In *Iskanian*, our Supreme Court concluded that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian*, *supra*, 59 Cal.4th at p. 360.)  The court further concluded "that the FAA's goal of promoting arbitration as a means of private dispute resolution does not preclude our Legislature from deputizing employees to prosecute Labor Code violations on the state's behalf.  Therefore, the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." (*Ibid*.)  The *Iskanian* court explained that a PAGA representative action is "a type of qui tam action." (*Id.* at p. 382.)  Accordingly, "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship.  It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees—that the employer has violated the Labor Code." (*Id.* at pp. 386-387.)

RGIS, like other employers who have had similar arguments rejected by appellate courts, first contends that *Iskanian* was wrongly decided, an argument we are compelled to reject.  "Arguing that a California Supreme Court case was 'wrongly decided' is not productive in a trial court.  Or here." (*Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 866, fn. 1, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.)

RGIS next argues that *Iskanian* was abrogated by *Epic Systems*, *supra*, __ U.S. __ [138 S.Ct. 1612].  In *Epic Systems*, the high court considered the relationship between the FAA and the National Labor Relations Act (NLRA) (29 U.S.C. § 151, et seq.). (*Epic Systems*, *supra*, __ U.S. __ [138 S.Ct. at p. 1619].)  In *Epic Systems*, an employee sought to litigate a Fair Labor Standards Act (FLSA) claim on behalf of a nationwide class under the FLSA's collective action provision, and a California overtime law claim as a class action under Federal Rules of Civil Procedure, rule 23. (*Id.* at p. __ [138 S.Ct. at

6

p. 1620].)  The court held that the NLRA did not take precedence over the FAA's requirement of enforcement of class action waivers.  (*Id.* at p. __ [138 S.Ct. at pp. 1623-1630].)  In addition to its discussion of the intersection between the NLRA and the FAA, the court broadly reiterated that the FAA requires courts " 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted."  (*Id.* at p. __ [138 S.Ct. at p. 1621].)

D.  Correia *and Subsequent Court of Appeal Decisions*

Following *Epic Systems*, the Fourth District Court of Appeal, Division One, decided *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, in which the court concluded that *Epic Systems* did not abrogate *Iskanian*.  The court recognized that "*Iskanian* held that a ban on bringing PAGA actions in any forum violates public policy and that this rule is not preempted by the FAA because the claim is a governmental claim," while *Epic Systems* "addressed a different issue pertaining to the enforceability of an individualized arbitration requirement against challenges that such enforcement violated the NLRA."  (*Correia*, at p. 619.)

*Correia* further recognized that the cause of action at issue in *Epic Systems* was fundamentally different from a PAGA claim.  (*Correia v. NB Baker Electric, Inc., supra*, 32 Cal.App.5th at p. 619.)  *Epic Systems* held that an employee who agreed to individualized arbitration could not assert claims on behalf of other employees under FLSA or federal class action procedures.  (*Correia*, at p. 619, citing *Epic Systems, supra*, __ U.S. __ [138 S.Ct. at pp. 1619-1632].)  *Iskanian*, on the other hand, held that "the PAGA claim was outside this rule because the employee had been deputized by the state to bring the qui tam claim on *behalf of the state, not on behalf of other employees*."  (*Correia*, at pp. 619-620, citing *Iskanian, supra*, 59 Cal.4th at pp. 384-389.)  The court concluded:  "*Epic* [*Systems*] did not reach the issue regarding whether a governmental claim of this nature is governed by the FAA, or consider the implications of a complete

ban on a state law enforcement action. Because *Epic* [*Systems*] did not overrule *Iskanian*'s holding, we remain bound by the California Supreme Court's decision." (*Correia*, at p. 620.)

Following *Correia*, other published cases have agreed with its holding: *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538; *Winns v. Postmates Inc.* (2021) 66 Cal.App.5th 803; *Rosales v. Uber Technologies, Inc.* (2021) 63 Cal.App.5th 937; *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461; *Olson v, Lyft, Inc.*, *supra*, 56 Cal.App.5th 862; *Provost v. YourMechanic* (2020) 55 Cal.App.5th 982; *Collie*, *supra*, 52 Cal.App.5th 477; *Zakaryan v. The Men's Wearhouse, Inc.* (2019) 33 Cal.App.5th 659, disapproved on another ground in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8 (*ZB, N.A.*).

RGIS raises several arguments in support of its contention that *Correia* and these other published cases were wrongly decided or are otherwise distinguishable. First, RGIS argues that the court in *Correia* did not have the benefit of complete briefing on the issue, and *Zakaryan* did not include sufficient analysis. We find *Correia* and the other published cases to be thorough and well-reasoned.

Second, RIGS argues that the court in *Collie*, *supra*, 52 Cal.App.5th 477 overlooked that *Epic Systems* is not limited only to class and collective actions. RGIS contends that *Epic Systems* broadly applies whenever an employee attempts to bring "a non-individual action." But as we have discussed, *Iskanian* concluded that a PAGA action "is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*," which is the real party in interest. (*Iskanian*, *supra*, 59 Cal.4th at p. 386.) *Epic Systems* did not consider a statutory scheme in which an employee brings a representative action as a private attorney general rather than as an individualized dispute against an employer. In the absence of United States Supreme Court precedent reaching a different result as to the same issue decided by the California Supreme Court, we are bound to follow the

8

California Supreme Court's decision. (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)

Our Supreme Court recently highlighted the difference between individual and representative claims. In *ZB, N.A., supra,* 8 Cal.5th at page 188, the court recognized that PAGA does not authorize the recovery of "victim specific" relief, including wages, because such wages are compensatory damages, not civil penalties. It freely cited *Iskanian* throughout the opinion, and although *ZB, N.A.* was decided after *Epic Systems*, our high court did not mention *Epic Systems*. *ZB, N.A.* did cite the "important principle" established by *Iskanian*: "employers cannot compel employees to waive their right to enforce the state's interests when the PAGA has empowered employees to do so. But for *Iskanian* to apply, the state must in fact have delegated enforcement of its interests to private citizens." (*ZB, N.A.*, at p. 197.)

Third, RGIS contends *Correia* and *Collie* do not apply to the facts of this case because the program here does not preclude a PAGA claim entirely, it only precludes such a claim for those employees who do not opt out of the program. In other words, RGIS contends that *Iskanian* is limited to circumstances where an employer has required an employee as a condition of employment to give up the right to bring representative PAGA actions.[2] This position was recently rejected by the First District Court of Appeal, Division Three in *Winns v. Postmates Inc., supra,* 66 Cal.App.5th at pages 810 to 811. The court in *Winns* concluded: "*Iskanian*'s holding that a PAGA waiver was unenforceable was premised on the public policy rationale that a PAGA waiver improperly circumvents the Legislature's intent to empower employees to enforce the Labor Code as agency representatives and harms the state's interest in enforcing the Labor Code. (*Iskanian*, [*supra*, 59 Cal.4th] at pp. 386-387.) *Iskanian* did not turn on

---

[2] RGIS focused on this point during oral argument.

9

how the worker entered into the arbitration agreement, or the mandatory or voluntary nature of the worker's consent to the agreement. Accordingly, Plaintiffs' ability to opt out of the fleet agreement, or their election not to do so, does not impact our analysis." (*Ibid.*; accord *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 648; *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1121-1123.) We agree with the *Winn* court's analysis on this point.

At oral argument, RGIS asserted that *Iskanian* did not preclude the possibility of a valid PAGA waiver by referencing page 103, footnote 8 in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. However, *Iskanian* cited *Armendariz* for the proposition that "employees are free to choose whether or not to bring PAGA actions *when they are aware of Labor Code violations*." (*Iskanian*, *supra*, 59 Cal.4th at p. 383, italics added.) Indeed, the footnote in *Armendariz* cited by *Iskanian* recognized that a valid PAGA waiver may occur where "an employer and an employee knowingly and voluntarily enter into an arbitration agreement *after a dispute has arisen*." (*Armendariz*, at p. 103, fn. 8, italics added.) In such cases, the court in *Armendariz* continued, "employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights." (*Ibid.*) However, the issue of whether *post*-dispute waivers contravene public policy is not the issue before us. Accordingly, we decline to conclude that Williams' opportunity to opt out of the arbitration agreement, before any dispute arose, took this case outside the scope of *Iskanian*. (See, e.g., *Securitas Security Services USA, Inc. v. Superior Court*, *supra*, 234 Cal.App.4th at p. 1122 [employee's pre-dispute opportunity to opt out of dispute resolution agreement "did not take this case outside of *Iskanian*"].)

Fourth, RGIS argues *Correia* was wrongly decided because that case distinguished *Epic Systems* on the basis that *Epic Systems* held an employee may waive claims on behalf of other employees, but in a PAGA case, the employee brings claims on behalf of the state. (*Correia*, *supra*, 32 Cal.App.5th at pp. 619-620.) RGIS contends that this

10

distinction is irrelevant because *Epic Systems* was concerned with enforcing the parties' agreement to individually arbitrate their disputes, and it had nothing to do with waiving third-party claims. However, the relevant question before us is whether *Epic Systems* decided the same issue differently than the California Supreme Court did in *Iskanian*. While *Epic Systems* broadly stated its holding, it did not address the statutory scheme at issue here, as we have discussed. Because it did not address the issue addressed by *Iskanian*, that case remains good law, and we must follow it.

Finally, RGIS contends that the "trend" in federal court is moving in the direction of the FAA preempting *Iskanian*. In so arguing, RGIS acknowledges that a panel of the Ninth Circuit Court of Appeals confirmed that *Iskanian* was correctly decided. (*Sakkab v. Luxottica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 431.) Nevertheless, RGIS points to a handful of trial court decisions suggesting that, "were the Supreme Court to take up the interplay between the FAA and *Iskanian* at some future date," *Sakkab* might face reversal. (*Echevarria v. Aerotek, Inc.* 2019 U.S. Dist. Lexis 101062 at p. *11; see *McGovern v. U.S. Bank N.A.* (S.D.Cal. 2019) 362 F.Supp.3d 850, 862, fn. 5, on reconsideration in part (Aug. 10, 2020); *Armando Valenzuela v. Decore-Ative Specialties* (L.A. Super. Ct. May 24, 2019) Case No. BC722127 [order re motion to compel arbitration].) We decline to disagree with binding California Supreme Court precedent based on the possibility that a future United States Supreme Court decision will overrule *Iskanian*.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover costs of appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                                   /s/
                                            Duarte, J.

We concur:

    /s/
Raye, P. J.

    /s/
Robie, J.